## SUPREME COURT.

STEPHEN CARMAN, appellant agt. ELIAS TRUDE, respondent.

Where there is an *absolute and unqualified sale* of personal property, there is an *implied warranty* by the vendor of title in himself, both of the property *and of the right to use it.*

Where the plaintiff sold to defendant, for $90, a patent ice safe, and stated to defendant that he owed the patentee $25 for the *use* of the safe, and it was agreed that the defendant should pay to the patentee that sum as a part of the purchase price of the article; and subsequently, on learning that the $25 was to be paid by the plaintiff to the patentee for *one year's use* of the safe, and that if he used it another year he was to pay $25 more, the defendant refused to pay the $25 remaining unpaid—upon which the plaintiff brought an action against him to recover that with other indebtedness:

*Held,* it appearing on the trial that the plaintiff's right of use of the safe was for the current year only, that there was a clear *breach of the implied warranty,* and the defendant was not bound to return the property nor surrender his right of use which he had purchased. And the amount of damages which the defendant was entitled to recover, on account of such breach of warranty, was $25, as he could make his right perpetual by the payment of that sum, which was the difference between the value of the right actually transferred and the one warranted to exist.

*Erie General Term, September,* 1863.

DAVIS, *P. J.;* GROVER and HOYT, *JJ.*

APPEAL from judgment of county court of Niagara county reversing judgment of a justice of the peace.

G. D. LAMONT, *for resp't, cited* 9 *Barb. S. C. R.,* 625.
GEO. W. COTHRAN, *for appellant.*

I. The county court reversed the judgment of the justice of the peace on the ground that plaintiff practiced a fraud upon defendant in withholding from him information as to the extent of plaintiff's right to the use of the Hensler safe.

1st. In this the county court erred, as *there was no fraud practiced on defendant.*

Defendant testified that plaintiff told him the patent right cost him $50 ; that he had got it of Hensler, and that there was $25 to be paid. Defendant had agreed to pay this $25, and so stated to Hensler, but he never paid it.

Furthermore, he never was disturbed in the use of the safe, but retained possession of it and used it in his market. From the defendant's own testimony it would appear that there was but $25 of the $50 remaining to be paid.

It is submitted that the defendant never having been molested in the use of the safe, and the plaintiff not having been shown to be in default in seeing that defendant should be called upon to pay more than the $25, there was no fraud practiced on defendant.

But suppose it were conceded that a technical fraud had been practiced, most clearly no damage had resulted to the defendant. He purchased the safe on the 24th July, and this action was brought in August following, and if he sustained no loss or damage, he had no right of action against the plaintiff, and was entitled to no diminution of plaintiff's demand.

2d. Fraud or no fraud is a question for the jury. (2 *Saunders on Pl. and Ev., part* 11, 1215 ; 4 *Man. and Gr.*, 414.)

Whether or not a fraud was practiced on defendant was the principal question litigated, the ipse dixit of the county court to the contrary notwithstanding. But we find the parties occupying the anomalous position of swearing for each other, and diametrically opposed to their own interests. At folio 15 plaintiff testifies : " I

was to give Hensler $25 for privilege of using it this season; if I used it any longer I was to pay him $25 more." At folio 9 he testifies that he didn't say anything about it to defendant; while at folio 17 defendant testifies that he "asked him what he asked for big safe; he said $90; $50 *for right*, $20 for lumber, $10 for use, and $10 for his time. I told him Nelson told me I had better go and pay for *the right* myself; plaintiff said: *I bought the right* for $25; said I could move it or do what I liked; said he got it of Hensler, and there was $25 to be paid; *he said the patent right cost him* $50."

Thus it appears that the defendant, who sets up fraud as a defence, insists that the plaintiff disclosed all the facts in the case to him, precisely as Hensler told him; while the plaintiff insists that he said nothing about the right at all to the defendant; and yet the county court asserts that there was no conflict of testimony on this point.

The decision of the justice on this point was final. (*People* agt. *Townsend*, 37 *Barb. S. C.*, 520.)

II. 1st. While it is indisputably true that fraud vitiates all contracts, at the election of the defrauded party, yet the rule deducible from all the authorities on the subject is, when a party upon whom a fraud has been practiced, in the purchase of personal property, seeks relief from the contract, he must immediately, upon discovering the fraud, *rescind* the contract *in toto*, by restoring all that he has received under it, and bring an action for the purchase price, if paid; or he may retain the property and bring an action for the recovery of the damage he has sustained, or recoupe his damages in an action brought against him for the purchase price. (*Voorhees* agt. *Earl*, 2 *Hill*, 288; *Hogan* agt. *Weyer*, 5 *id.*, 389; *Barton* agt. *Stewart*, 3 *Wend.*, 236; *Minturn* agt. *Main*, 3 *Selden*, 220.)

In *Minturn* agt. *Main* the court says: "In this case there was no rescinding of the contract, or even an

Carman agt. Trude.

attempt to do so. It was an attempt to hold the contract good, so far·as to retain the property, and rescind it so far as to avoid paying for it. I know of no principle bearing upon this case that would warrant such a result."

In *Hogan* agt. *Weyer*, BRONSON, J., says : "When a party who has derived a benefit from the contract, seeks to avoid it on the ground of fraud, he must first offer to restore that which he has received, so that the parties may be put in *statu quo*. When that cannot be done, *the contract stands*, and the injured party must seek redress in an action on the case for the fraud, or if he is sued on the contract he may recoupe damages. *He cannot say that the contract is good so far as he has derived a benefit under it, and void for the residue.* Such a rule would be manifestly unjust."

2d. When the purchaser has a right to rescind the contract on the ground of fraud, he *waives* his right by dealing with the property after he is cognizant of the fraud. (*Campbell* agt. *Flemming*, 1 *Adol. and El.*, 40.)

3d. The defendant having affirmed the contract by neglecting to rescind it, sought before the justice to recoupe damages. The question, as to the extent of his damages, was fully submitted to the justice upon the evidence, and the justice, in rendering judgment, allowed the defendant $11.41 damages, for the judgment is that much less than the plaintiff was entitled to recover.

4th. The county court entirely misapprehended the law applicable to the case, for it is not only unjust, but simply absurd to say that the defendant can avoid the contract and still retain the property without paying for it.

By the court, DAVIS, Justice. This action was brought to recover the purchase price of property sold by plaintiff to defendant. Amongst the property sold was a patent meat safe or ice house, which, as appears from the evidence, was sold at $90. Of this price the defendant paid

to plaintiff $65, leaving $25 unpaid; which last named sum the defendant agreed to repay to one Hensler, who was the owner of the patent right.

The sale of the safe was an absolute and unconditional one, and purported to transfer to the defendant a perfect title to the property, with the right to use the same.

At the time of the sale, the plaintiff represented to defendant that he was owing to Hensler the sum of $25 for the right to use the safe, and requested him to pay that debt as part of the purchase price; which he agreed to do. When Hensler afterwards called for his pay, it was disclosed by him to defendant that the $25 was to be paid for one year's use of the right, and that the agreement between himself and plaintiff was, that if plaintiff used the safe beyond the year, he should pay $25 more for the full right. The defendant, on learning these facts, refused to pay the $25 remaining unpaid on the safe, and the plaintiff brought this action to recover that with other indebtedness.

The sale being an absolute and unqualified one, there was an implied warranty by the vendor of title in himself, *both of the property and of the right to use it.* (*Dresser* agt. *Ainsworth*, 9 *Barb.*, 625, *and cases there cited.*)

It was satisfactorily shown on the trial that the plaintiff's right of use was for the current year only. The defendant got that right by his purchase, in addition to the property in the materials of which the safe was constructed, but he got nothing more. The plaintiff's own testimony shows that he owned nothing more which he could sell. There was, therefore, a clear breach of the implied warranty, and there was no necessity in the case for a rescission of the contract or an eviction. The defendant was entitled to enjoy the right of use which plaintiff had transferred to him. This right was quite independent of the property in the safe itself. That passed absolutely, and so did the right so far as it existed; but

the warranty, so far as it applied to the right, was that it was perpetual and unconditional. The defendant was not bound to return the safe nor to surrender the brief right of use which he had received from the plaintiff; nor, in my opinion, was he bound to delay till after the expiration of the year, to see whether the patentee would interfere with its further use. When he was sued for the purchase price of an unlimited right of use, he was entitled to show in defence that no such right was transferred to him, and to have deducted from the purchase price the difference between the value of the right actually transferred and the one warranted to exist. This question is quite distinct from one of fraud, and stands upon altogether different principles.

When it was conceded by the plaintiff that he owned only the right to use the safe for a single year, the breach of his warranty was shown; and the remaining fact to be established, in order to entitle defendant to a deduction from the purchase price, was the amount of damages.

The evidence before the justice was of a character, it seems to me, which fixed the true rule; although the case seems not to have been tried with regard to the true principles that govern it. It was shown that the price of a perpetual right to use the safe was $50; that an arrangement existed between the owner of the patent and plaintiff, by which the right should be made perpetual after the expiration of the year, on payment of $25 more.

The defendant had paid, on the purchase price of the safe, $25 to plaintiff as part of the price of the alleged right of use, and just this amount was subsequently paid by plaintiff to the owner of the right in payment for the year's use. These facts, I think, were sufficient to show that defendant's measure of damages for breach of the warranty was $25, because they show that he could make his right perpetual by the payment of that sum. And I think he should have been allowed that sum by the jus-

tice, as a deduction from or extinguishment of that part of plaintiff's demand.

It appears from the returns that the justice did not allow that sum; and I think it sufficiently appears that he allowed no damages on this claim of defendant. The justice evidently allowed to plaintiff, on his own testimony, $15 for the pork and $25 for the safe, from which he deducted the $1.60 balance of gas bill paid by defendant, and to the remainder added a small amount of interest to make up his judgment.

From the view I have taken of the case, I arrive at the same conclusion with the learned county judge, though for different reasons, and am of opinion that the judgment of the county court should be affirmed.

Judgment affirmed.