<hr />

### THE ELECTRON.

### ELECTRO-DYNAMIC CO. v. THE ELECTRON.

### BIGLER v. ELECTRO-DYNAMIC CO.

(District Court, S. D. New York. April 8, 1893.)

1. MARITIME LIEN—ARTICLES DELIVERED WHEN STATE LAW GIVES LIEN.

Where articles were delivered for the use of a yacht at Newark, N. J., according to contract, and the law of that state expressly gives a lien for such work and materials, *held*, that a lien against the vessel could be enforced, whether the articles were furnished on the credit of the yacht or not.

2. SALE—WARRANTY—WRITTEN CONTRACT—PAROL EXCLUDED.

Certain electrical machines were furnished to a yacht with a view to increasing her speed. The contract was in writing, and contained no guaranty that the machines would actually so increase the speed, but only a warranty of increased horse power. The evidence indicating that the guarantied additional horse power was actually developed, and that as to increase of speed the vendor had undertaken nothing, parol evidence as to a guaranty of increase of speed being excluded, and the written contract having been fairly complied with by the vendor, *held*, that the latter was entitled to the balance of the contract price.

SAME—SALE OF PATENTED ARTICLE—INABILITY OF VENDOR TO GIVE RIGHT TO LEGAL USE.

In the case of the sale of a patented article the use of which is the substance of the right intended to be given and acquired, the right to use should stand on the same ground as the title. Unless, therefore, facts appear which show that the vendee took the risk of conflicting claims as to the patent right, the vendor is bound either to secure to the vendee the right to use that which was sold for use, or answer in damages for the loss of the value of that use from the time any further use was prevented.

**4. SAME—RIGHT TO DAMAGES—EVICTION.**

To give any ground for a right to damages by the vendee of a patented article for inability to use it there must have been an eviction of the vendee from the use of the article, or what is equivalent to an eviction.

**5. SAME—EVICTION—WHAT IS—INJUNCTION IN PATENT SUIT.**

A perpetual injunction, such as is usually given in patent cases by a court of equity, where notice of such adjudication is brought home to a purchaser of the article by the person having the legal right, with an imperative prohibition against any further use, is such an eviction as will entitle the purchaser to damages against the vendor.

**6. SAME—DAMAGES—HOW ASCERTAINED.**

The evidence leaving it doubtful what would be the damage to the vendee of a patented article by reason of its use having been prohibited by the victorious party in a litigation over the patent in which the vendor of the article was the unsuccessful litigant, *held*, that a suit for damages against the vendor for loss for the use of the article would be suspended for 30 days to allow the vendor to obtain from the legal patentee a license for the vendee to use the patent, failing which it would be referred to a commissioner to ascertain the value of the future use of the patent of which the vendee had been deprived.

In Admiralty. Libel for balance of price of repairs and supplies. Cross libel to recover damages for breach of the contract under which the repairs were made. A stay of proceedings under the original libel until security was given for the damages claimed under the cross libel was heretofore allowed. 48 Fed. Rep. 689.

Robinson, Biddle & Ward, for Electro-Dynamic Co.
Wilcox, Adams & Green, for the Electron.

BROWN, District Judge. The above libel was filed to recover payment of the balance of the contract price for supplying to the yacht Electron certain electrical storage batteries, and other work and material, in the spring of 1891. The answer alleges that the batteries were designed to increase the electrical motor power of the yacht, and to enable her to attain a certain increased speed, and that the libelant represented that this could be obtained by increasing the number of cells and rewinding the motor; and that by such changes she would make from 1,400 to 2,000 revolutions of her wheel per minute on fast speed; and that the agreement for repairs was entered into on the faith of these assurances; but that the work supplied wholly failed to produce the power, the velocity, or the increased speed, the greatest number of possible revolutions being 770; also, that the batteries furnished were an infringement of the Brush Electric Company's patents, which infringement has been adjudicated, and the claimant thereby prevented from the further use of the batteries furnished. A cross libel was filed, stating similar facts, for the purpose of recovering $2,000 which had been paid on account of the work and other damages, tendering back the batteries and other articles delivered. An offer to return the articles was made about two months after the original libel was filed, and a few days before the filing of the answer thereto, and of the cross libel.

The contract between the parties was in writing, through the libelant's letter of February 17, 1891, afterwards amended, in

v.56f.no.6—20

some respects, by certain corrections suggested by the claimant; and as thus amended definitely accepted by the claimant by letter of February 28th. The libelant did business in Philadelphia, whence the letter of February 17th was written. The claimant's acceptance was written from his residence in Newburgh, N. Y. The essential parts of these letters, as respects the questions at issue, are as follows, namely, the letter of Mr. Griscom, the president of the libelant company, addressed to Mr. Bigler at Newburgh, and dated February 17, 1891:

"Dear Sir: I have just seen Mr. Bates who confirms the rough estimate I made to you the other day in answer to your request for a price on refitting the Electron with two hundred and fifty (250) cells of storage battery and with the original motor rewound so as to produce 15 horse power, or 25 horse power at a spurt, or to produce readily about 10 horse power in ordinary service. We therefore propose to furnish you with two hundred and fifty new cells of 23 M accumulators, rewind one motor, supply two new armatures, supply all necessary switches and wiring and ten incandescent lamps and sockets for the sum of four thousand and ten dollars, payable two thousand dollars cash on delivery of the material at Newark, N. J., ready to go on the boat, and one thousand dollars in a 60 days' note and one thousand and ten dollars in a 90 days' note, interest added, drawn to your order and indorsed by you. * * *     Yours, truly,          W. W. Griscom, President."

Mr. Bigler replied by letter dated February 21st, as follows:

"Newburgh, Feb. 21, 1891.
"W. W. Griscom, Esq., Prest. 224 Carter St., Phila.—Dear Sir: Your favor of the 20th inst. is at hand and I notice what you say confirming our verbal understanding of the power which you propose for the motor to be used in the electrical boat Electron. This is entirely satisfactory. All the other specifications are as we talked except you had 12 lamps instead of ten, the payments were $2,000 cash on delivery of the boat completely fitted with the electrical works, balance 2 and 3 months as you state, but the price complete you have $4,000 and them $4,010. We won't let the 10 dollars spoil the trade as I am sure you will consider that small amount. You can therefore go on with the work, as I propose to have the boat at the Newark factory about the first of April.     Yours, truly,          J. Bigler."

The terms of this reply not being wholly satisfactory to Mr. Griscom, the latter, by letter of February 26th, wrote to Mr. Bigler as follows:

"Dear Sir: Your favor of Feb. 21st at hand. I have entered your order for the equipment of the electrical boat Electron and will commence work on the motor promptly. Will you please send a formal acceptance of my letter of Feb. 17th which has been approved by the committee and which I am not authorized to charge in any part? Will you oblige me by performing this formality promptly, in order that we may lose no time?
                    "W. W. Griscom, President."

In reply to this, Mr. Bigler wrote to Mr. Griscom under date of February 28th as follows:

"Dear Sir: Your favor of the 26th inst. is at hand in which you say 'I have entered your order for the equipment of the electrical boat Electron and will commence work on the motor promptly.' You ask for a formal acceptance of your offer of the 17th of this month. I certainly intended by my letter of the 21st to fully accept your proposition. If you do not consider it so I will repeat I agree to pay you $4,010 for the work complete; $2,000 cash when the boat is equipped complete as per your letter of the 17th inst., $1,000 in my note of 2 months, $1,010 at 3 months, both notes made to my order, and

by me indorsed. Boat to be ready for delivery early in May. Interest to be added to the notes. I trust this covers your proposition.

"Yours, &c., **J. Bigler.**"

1. The first point taken in defense is that the articles were not furnished on the credit of the yacht, and that there is no lien. They were delivered, however, to the vessel at Newark, N. J., where the contract provided that they should be delivered, and the law of that state expressly gives a lien for such work and material. This objection must, therefore, be overruled.

2. The burden of the defense on the merits, as well as of the claim in the cross libel, is, that the new batteries and rewinding of the motor did not produce the expected speed of the boat in actual service, nor the number of revolutions of the wheel referred to in certain conversations, nor 10 horse power in ordinary service, nor 25 horse power at a spurt; and that the batteries and work were defective and inefficient, and the beneficial use prevented by the infringement of the Brush patents.

The rule of law is well settled, that contemporaneous or prior conversation between the parties cannot be resorted to in order to enlarge or vary the rights and obligations of parties to a written contract. It may be set aside for fraud, or reformed in equity to correct a mutual mistake. The recent decisions of the supreme court in no respect relax this ancient rule. De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. Rep. 536. The evidence offered by the claimant, therefore, for the purpose of proving a guaranty of a definite number of revolutions was rejected; but for the purpose of giving the defendant the benefit of any possible doubt about what had been intended by the "horse power," the conversations on that subject were admitted; and by that means considerable appears in the testimony with reference to revolutions also. From the contract made by the letters of February 17th and 28th, it is clear, however, that there was no guaranty of any kind, save the production of horse power; and the result of all the evidence on this point seems to me to show clearly that the batteries did produce or "develop" in the language of the claimant's letter of February 19th, the amount of horse power therein agreed. It is plain from the testimony not only that the agreement itself contains no warranty as to the number of revolutions that the wheel should make, or as to the speed which the boat should attain, but that the libelant was in no condition to determine either of these things accurately, and did not undertake anything in regard to them. There is no allegation in the pleadings and no evidence of any fraud. Mr. Griscom's letter of February 26th, moreover, was explicit notice to the claimant that he was "not authorized to change in any part" the proposition previously submitted; and with this notice the proposition was accepted by the claimant. The responsibilities of the libelant under it cannot, therefore, be enlarged or varied by parol evidence of prior conversations.

A few weeks afterwards it was ascertained that at Atlantic City, where the yacht was intended to run in the carriage of passengers, the voltage of the electric current from which she must draw her

supplies was not sufficient for properly charging the 250 cells as designed. A substitute, by nearly doubling the number of cells, viz. to 376, was therefore agreed upon, but without any further change in the contract.

It is evident that the whole subject was in the nature of an experiment, in which whatever may have been the hope or expression of confidence by either party, as to the result in increased speed, no warranty or guaranty was assumed by the libelant. Even down to the trial, the simple question what was the amount of horse power delivered at the propeller blade, over and above all friction of machinery, was left undetermined, and is still uncertain; so that if the contract were held to import an obligation to supply so much effective power at the propeller, the evidence would not establish any breach. One object of the admission of evidence in regard to the conversations of the parties in reference to power was to ascertain the common understanding of the parties, if there was any, as to what was intended by producing or developing so much horse power. In the absence of any definite evidence to the contrary, I should hold that this phrase, as applied to an electric battery, meant the horse power developed in the battery and wires, and delivered to the machinery; subject to such frictional diminution in the machinery itself as might intervene between the ends of the wires of the battery and the propeller blades. If the latter view be correct, the evidence shows that the agreement was more than fully performed.

The evidence does not sustain the charge of bad material or bad workmanship.

3. The authorities are very meager as respects the obligations of the vendor of a patented article in regard to any warranty of a perpetual right of the vendee to use it. In the present case the contract was for the supply of "23 M accumulators." It was a contract for a definite thing, manufactured by another company than the libelant. The articles were delivered pursuant to the contract, and were used by the defendant without hindrance during the season of 1891, as long as he desired to use them, and it does not certainly appear whether he has desired to use them further or not. Where both the parties to a sale have knowledge of the material facts regarding conflicting claims to a patent right and no guaranty is asked or given, such as in practice often is given, this might possibly be held to be sufficient evidence of the intent of the parties that no guaranty or agreement for indemnity was intended. In the present case, as I understand the evidence, the rights of the different patentees were in controversy at the time this contract was made, and no final adjudication had been made. The libelant, it appeared, though not identical with the patentee company, by its members, as I understand, had the control of it, and had expected a decision in its favor. The claimant testifies that he knew nothing of this controversy, and that nothing was said to him upon the subject by the libelant. Neither the answer nor the cross libel, however, charges any secrecy or bad faith on the part of the libelant in making the contract, and if the controversy were

still undetermined and no interruption of the claimant's use of the articles had occurred, plainly the controversy over the patent and its result would be no defense. American Electric Const. Co. v. Consumers' Gas Co., 47 Fed. Rep. 43, affirmed 50 Fed. Rep. 778, 1 C. C. A. 663.

In the case of Carman v. Trude, 25 How. Pr. 440, the plaintiff had sold a patent meat safe to the defendant, who paid the full price therefor, less $25, which the plaintiff told him was owing to the person having the patent right thereon, and whom the vendee assumed to pay. It appeared, however, that the $25 reserved was the price owing to the patentor for the use of the safe for a single year only; and that $25 more was required for the perpetual use of it. The supreme court of this state on appeal held that the sale carried an implied warranty of both the article and the right to use it, that the vendee was entitled to the additional $25, and that this was his only proper damage in the case. The decision was based, not upon the ground of fraud, but on the ground that the plaintiff was not the full owner of that which he had undertaken to sell and of what he had impliedly warranted; and that he must, therefore, pay as damages such an amount as was required to make the sale good.

While that case is not exactly parallel with the present, it seems to me to have been correctly decided, and that the principle of the case is applicable here. The mere ownership of the title to personal property designed solely for use is of no value, if the owner cannot lawfully use it at all. Its value is in its use. In a case like the present, the use is the very substance and essence of the right intended to be given and acquired. As respects the vendor's implied warranty the right to use should stand on the same ground as the title. Unless, therefore, sufficient facts appear to warrant the inference that the vendee took the risk of any conflicting claims as to the patent right, I think the vendor is bound either to secure to the vendee the right to use that which was sold for use, or else to answer in damages for the loss of the value of that use from the time any further use was prevented. See Benj. Sales, §§ 985–990, and notes. To give any ground, however, for damages, there must doubtless be an eviction of the vendee from the use of the article, or what is equivalent to an eviction. American Electric Const. Co. v. Consumers' Gas Co., supra. A final adjudication between the parties principally concerned, resulting in a perpetual injunction, such as is usually given in patent cases in a court of equity, is, I think, equivalent to eviction, when notice of such adjudication has been brought home to the party by the person having the legal right, with an imperative prohibition, such as was given in the present case, against any further use of the article.

What damages should be allowed to the defendant for the interruption of the further use of this battery, is not easy to determine upon the evidence. A proper award of damages, as indicated in the case of Carman v. Trude, supra, would be either what it would cost to procure a license for the continued use of the

battery in question; or, if that could not be done, then the amount of the pecuniary loss to the claimant arising from the inability to use the battery further. On the latter question, the value of the battery for practical use in the condition it was in when further use was prohibited, would be an important question; and on this point, according to the claimant's evidence, its value would seem to be small; partly from its failure to accomplish what was needed for his vessel, and partly from the damage or depreciation it sustained from its use during the season of 1891. Some time in September, 1891, as I understand, the yacht was taken to Newburgh, laid up for the winter, and the battery there taken out of her. Of the 376 cells, 117, as I understand from the captain, were bad. No defects were pointed out in the other parts of the work supplied. The evidence, as it stands, is insufficient to enable me to form any satisfactory judgment as to what is the damage to the claimant from the loss of the future use of the battery, arising from the final adjudication in the patent case. The fact, however, that no prohibition to use the battery was served on the claimant until after this libel was filed, nor until shortly before the answer and the cross libel were interposed, and long after the battery had been taken out of the yacht, suggests the surmise that this formal notice may have been voluntarily obtained by the claimant for the purposes of this suit.

A proper disposition of the matter for the present will, I think, be to suspend its further hearing, allowing to the libelant 30 days' time in which to procure, if it can, from the legal patentee a license to the claimant for the uninterrupted use of the battery; and if that be obtained and deposited in the court for the use of the claimant, then that the libelant have a decree for the balance of the contract price, with interest to November, 1891, when notice of the prohibition was served. If such license is not obtained within 30 days, that it then be referred to a commissioner to ascertain the value of the future use of the battery of which the claimant has been deprived; and that the amount, as thus determined, be allowed as an offset against the balance of the contract price and interest as above stated.